UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROY LEE ROGERS,

        Petitioner,

v.                                                  Case No. 11-C-137

JEFFRY PUGH,

        Respondent.

**DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On February 4, 2011, Petitioner, Roy Lee Rogers, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his state court conviction and sentence were imposed in violation of his rights under the Constitution. In 1994, following his guilty plea, he was convicted of one count of first-degree intentional homicide, party to a crime, contrary to § 940.01(1) and § 939.05 (1991-92) of the Wisconsin Statutes. He was sentenced to life imprisonment with parole eligibility in 2020. As noted previously by the court, his post-conviction appeal history is extensive. After his unsuccessful appeals in the state court system, he obtained federal habeas relief in 2003. The relief he obtained was atypical in that the district court judge ordered that the state allow Rogers a new appeal on the basis that he had not been informed of the dangers of proceeding on appeal without the benefit of counsel. Rather than file a direct appeal, Rogers' counsel filed a post-conviction motion before the trial court. After an initial reversal, the trial court ultimately denied Rogers' post-conviction motion and the court of appeals subsequently affirmed the lower court's decision. *State v. Rogers*, 2008 WI App 51, 747 N.W.2d 527 (unpublished table decision). Following the court of appeals' decision, Rogers filed another post-conviction motion, proceeding

*pro se*, on the ground that his post-conviction counsel was ineffective for not raising several claims in his first post-conviction motion. The trial court denied his motion without a hearing and the court of appeals affirmed the trial court's decision. *State v. Rogers*, 2011 WI App. 136, 805 N.W.2d 734 (unpublished table decision). While his appeal was pending on his second post-conviction motion, this court granted a stay and abeyance, allowing Rogers to complete the exhaustion of several of the claims raised in his petition. Now that Rogers' claims are fully exhausted and with the issues fully briefed by the parties, the matter is ripe for decision.

## BACKGROUND

The underlying factual circumstances surrounding Rogers' conviction are particularly reprehensible. According to the criminal complaint, on September 20, 1993, Rogers and two accomplices, Darrell Tyler and Dawan Turner, abducted Clance Venson, Jr., with the intention of robbing him of his money and his car. For reasons unknown, Venson had agreed to give Rogers and his accomplices a ride. At some point during the ride, the three tied Venson's hands, taped his mouth, and forced him into the trunk of his car. After driving around for about an hour, they stopped the car and one of the three opened the trunk, aimed a gun, and shot Venson (there were differing accounts in the complaint as to who fired this shot). The group reentered the car and drove around for a short period. They again stopped the car and this time, Rogers opened the trunk, aimed at Venson's head, and fired. Rogers and his two accomplices then drove to a friend's house where Rogers sold the gun. Afterward, the three drove the car for another short period, parked the car and attempted to rid the car of evidence by using bleach. They then set fire to the car with Venson's body remaining in the trunk. A later autopsy confirmed that Venson died as a result of a gunshot wound to the head. Rogers was sixteen at the time of the above described events.

2

Rogers was arrested without a warrant on September 21, 1993. He was taken to the Milwaukee Criminal Investigations Bureau and was interrogated by two detectives. After Rogers was granted federal habeas relief in 2003, he was eventually able to obtain a *Miranda-Goodchild* hearing on his motion to suppress the statements he made to the detectives on the day of his arrest. Detective John Wesley, who interrogated Rogers on the day of his arrest, testified that he read Rogers his *Miranda* rights from a standard card in accord with his standard practice. He further stated that he stopped after reading each right and made sure both that Rogers understood his rights and that he agreed to waive his rights. Rogers testified that he asked for an attorney while Detective Wesley was reading him the *Miranda* rights from the card and that Detective Wesley replied that they would "get to that." Detective Wesley contradicted this assertion by Rogers saying that at no time did Rogers request to talk to an attorney or his parents or assert his right to remain silent. Rogers also testified that at no time did he attempt to invoke his right to silence. (Mot. Hr'g Tr. 20:15-18, ECF No. 32-8.) Rogers acknowledged that he had initialed all the pages of his statement, which included the acknowledgment that he agreed to waive his rights. After listening to the testimony, the trial court, crediting the testimony by the detectives, found that Rogers had waived his rights and that his confession was voluntary.

**LEGAL STANDARD**

Rogers' petition is covered by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376 (2000). In

3

reviewing the merits of a petition for habeas relief, "[t]he relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). Thus, it is the two decisions of the Wisconsin Court of Appeals noted earlier that are at issue here.

Mere error is insufficient to support a decision granting habeas relief; "[r]ather, in order to trigger grant of the writ, the state-court decision must be both incorrect and unreasonable." *Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005). "An 'unreasonable application' of United States Supreme Court precedent occurs when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Ellison v. Acevedo*, 593 F.3d 625, 632 (7th Cir. 2010) (citing *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005)). The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). A decision is not objectively unreasonable unless it falls "'well outside the boundaries of permissible differences of opinion.'" *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). Further, in performing an evaluation, the court presumes the factual findings of the state court to be correct, unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Allen v. Buss*, 558 F.3d 657, 661 (7th Cir. 2009).

4

Case 1:11-cv-00137-WCG   Filed 06/14/13   Page 4 of 14   Document 40

**DISCUSSION**

**1. 2008 Court of Appeals Decision**

Rogers in his first post-conviction appeal argued that his motion to suppress his inculpatory statement given to the detectives who interrogated him should have been granted because (1) the state did not prove that he waived his right to counsel or his right to silence and (2) his statement was involuntary in that it was the product of undue police coercion. On the first issue, the court of appeals noted the trial court's finding that the detective's testimony was more credible than Rogers'. Detective Wesley testified that he read Rogers his *Miranda* rights from a standard card. He further testified that he stopped after reading each right in order to ascertain whether Rogers understood. He also testified that Rogers waived his rights and that Rogers initialed each page of his statement, which included the acknowledgment that he was read his rights and waived them. While Rogers testified that he attempted to invoke his right to counsel while Detective Wesley was reading him his rights, this was flatly contradicted by Detective Wesley. (Mot. Hr'g Tr. 12:12-18, 41:2-4, ECF No. 32-8.) Detective Wesley also denied that Rogers ever requested to talk to his parents during the interrogation.

Under 28 U.S.C. § 2254(d)(2), a federal court may grant a state prisoner habeas relief if his claim was adjudicated on the merits in state court and "resulted in a decision . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The trial court is entitled to weigh the credibility of witnesses and to make findings of fact. And the trial court found that Rogers had not attempted to invoke his right to silence or counsel, that he was read his rights, that he understood those rights, and that he waived them. Based on a review of the testimony, the trial court's findings were reasonable. The court of appeals held that the State had adequately met its burden of proof that Rogers was advised of and had waived his

5

*Miranda* rights in light of the testimony presented at Rogers' *Miranda-Goodchild* suppression hearing. Based on Detective Wesley's testimony that he read Rogers his *Miranda* rights and that Rogers waived those rights, as well as Rogers' acknowledgment that he initialed his statement indicating his waiver, the court of appeals' decision was not an unreasonable application of federal law. The decision was based on a reasonable determination of the facts in light of the evidence presented.

Rogers also asserts that his confession was involuntary in that it was obtained through undue police coercion. In evaluating the voluntariness of Rogers' confession, the state court was obligated to consider the totality of the circumstances surrounding the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Etherly v. Davis*, 619 F.3d 654, 661 (7th Cir. 2010) (stating that the *Schneckloth* test applies to juveniles, but that their confessions must be examined with "special care"). This includes an evaluation of individual characteristics, such as his "age, experience, education, background, and intelligence" and "whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). The context of the interrogation is also relevant, especially the "length of time that the juvenile was questioned by the authorities and the absence or presence of a parent or other friendly adult." *Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007). "[I]t is the totality of the circumstances underlying a juvenile confession, rather than the presence or absence of a single circumstance, that determines whether or not the confession should be deemed voluntary." *Id.* at 793. Finally, the state court had to consider whether the confession arose from "excessive coercion or intimidation." *Etherly*, 619 F.3d at 661 (quoting *Hardaway v. Young*, 302 F.3d 757, 765 (7th Cir. 2002)).

6

Case 1:11-cv-00137-WCG   Filed 06/14/13   Page 6 of 14   Document 40

At the conclusion of the *Miranda-Goodchild* hearing, the trial court found the following: At the time of his interrogation, Rogers was sixteen years old. Rogers was very independent, having traveled to California without his parents. He was of average intelligence, in good health, and did not suffer from mental defects. He was attending high school at the time of his arrest and he had had some prior contact with the police. (According to Rogers' testimony, he had only been stopped by police for a curfew violation, but he had never been subject to an arrest or interrogation.) When Rogers was first moved into the interrogation room, one of his hands was cuffed to a metal ring on the wall. This was done because at the time, the interrogation rooms could not be locked. He was cuffed to the wall for some three to four hours prior to questioning. Once the two detectives came into the interrogation room, Rogers was uncuffed and free to walk about the room. He was given something to drink and cigarettes. The interrogation was relatively short, lasting about two and a half hours. Rogers was informed of his *Miranda* rights and he waived them. The trial court, weighing the above factors, found that Rogers' confession was voluntary. Applying state law consonant with the above federal standards governing voluntariness of juvenile confessions, the court of appeals agreed, noting in particular that Rogers' statement minimized his role in the victim's death by pointing the finger at his two accomplices. Essentially, Rogers stated that each of the three involved in Venson's murder had taken turns opening the trunk and firing at the victim. In contrast, his accomplice, Darrell Tyler, stated in his confession that Rogers was solely responsible for shooting the victim. (ECF No. 33, at 62-67.)

The court of appeals reasoned that the fact that Rogers minimized his role in Venson's death by implicating the active participation of his accomplices inferred that his confession was voluntary. If Rogers had been subject to undue police coercion, the expectation was that Rogers would have solely accepted responsibility without pointing fingers at the other accomplices. The decision of

the court of appeals was not contrary to Supreme Court precedent. Rogers was informed of his *Miranda* rights prior to questioning, which Rogers indicated he understood. He was free to move about the interrogation room and was given creature comforts. There is no evidence that the detectives made promises of leniency to Rogers. The confession itself is not suggestive of undue police coercion for the reasons noted by the court of appeals. Though a juvenile at the time, there was evidence that Rogers had a greater degree of independence and had average intelligence. When viewing the totality of the circumstances, the evidence simply does not suggest that Rogers' will was overborne. Based on the record, this court cannot say that the court of appeals' decision was contrary to precedent or involved an unreasonable determination of the facts based on the evidence presented in the trial court proceeding.

**2. 2011 Court of Appeals Decision**

In his second post-conviction motion, Rogers asserted a claim of ineffective assistance of post-conviction counsel. He argues that his post-conviction counsel was ineffective because he failed to raise the following issues in his first post-conviction motion: (1) his guilty plea was not intelligently and voluntarily made because he was not informed of the elements of the criminal charge and he didn't understand the elements, (2) his trial counsel was ineffective because he should have moved to suppress on the ground that there was no probable cause for Rogers' arrest, (3) his post-conviction counsel was ineffective because he should have moved to suppress on the ground that Rogers did not receive a hearing within 48 hours of his arrest, and (4) his post-conviction counsel was ineffective because he did not sufficiently rely on Wis. Stat. 938.19(2) in support of suppression. The trial court denied his second post-conviction motion without an evidentiary hearing. Under Wisconsin law, a trial court has discretion to deny a motion for post-conviction relief without a hearing where the movant fails to allege facts that, if true, would entitle him to

relief. *State v. Allen*, 2004 WI 106, ¶ 14, 682 N.W.2d 433 ("A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief."). The failure to allege sufficient facts to warrant a hearing on a claim constitutes an adequate and independent state law ground for denying relief, see *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005), which may constitute a procedural default.

Rather than rely on procedural default, the respondent "considers the state appellate court's decision to constitute a decision both on the merits of Rogers' ineffectiveness claims and the merits of the underlying or incorporated claims." (Resp't Opp'n Br. 13, ECF No. 37.) The court of appeals analyzed each of Rogers' claims under the umbrella of ineffective assistance of post-conviction counsel. To evaluate ineffective assistance of counsel claims, the Supreme Court enunciated a two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether the defendant was prejudiced by counsel's deficient performance. *Id.* at 688-92. For the second prong, prejudice may be established where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). In the context of a claim of ineffective assistance of post-conviction counsel, "[h]ad appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance. If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.*; see *also Smith v. Robbins*, 528 U.S. 256, 288 (2000).

Concerning his claim of ineffective post-conviction counsel, Rogers maintains that his counsel was ineffective for not relying more on Wis. Stat. § 938.19(2) (formerly Wis. Stat. § 48.19(2)) in his arguments that Rogers' statement was involuntary. Section 938.19(2) mandates that when a juvenile is taken into custody, the person taking the juvenile into custody must "immediately attempt to notify the parent . . . of the juvenile by the most practical means." In *Theriault v. State*, the Wisconsin Supreme Court explained:

> [F]ailure to notify parents or guardian in accord with statute does not per se render a confession inadmissible unless the statutes expressly so provide. The failure to promptly notify and the reasons therefor may be a factor, however, in determining whether the confession was coerced or voluntary. If the police fail to call the parents for the purpose of depriving the juvenile of the opportunity to receive advice and counsel, that would be strong evidence that coercive tactics were used to elicit the incriminating statements.

66 Wis. 2d 33, 48, 223 N.W.2d 850 (1974). While the two detectives who interrogated Rogers acknowledged that they did not immediately attempt to notify his parents prior to questioning, this does not serve to bar the admissibility of his confession. Rather this was only one factor for the court to consider. In fact, Rogers' post-conviction counsel raised this factor in his argument to the trial court in support of suppression. (*See* Mot. Hr'g Tr. 57:25-57:4, ECF No. 32-8.) Even if his post-conviction counsel could have relied more on the parental notice statute, it is not likely this would have lead to a different result. There is no per se rule that a police officer's failure to immediately attempt notifying a juvenile's parents will result in the exclusion of a confession. *See Theriault*, 66 Wis. 2d at 44; *Jerrell C.J.*, 2005 WI 105, ¶ 30, 699 N.W.2d 110. Moreover, unlike the juvenile in *Jerrell*, where a 14-year-old interrogated by police repeatedly requested to talk to his parents and whose requests were denied, Detective Wesley testified that Rogers never requested to speak with his parents. (Mot. Hr'g Tr. 43:13-20, ECF No. 32-8.) The court of appeals' decision holding that Rogers could not show prejudice on this basis was not objectively unreasonable.

10

Rogers next argues that his counsel was ineffective for not attacking the sufficiency of his guilty plea. The court of appeals held that Rogers had not pleaded sufficient facts to state a claim on this ground, relying on *State v. Howell*, 2005 WI 75, ¶¶ 27, 75, 734 N.W.2d 48. Rogers did not allege that he told his post-conviction attorney that he did not know or understand the elements, that his trial counsel told his post-conviction attorney he didn't understand, or that his post-conviction attorney failed to interview him at all on the subject. Counsel cannot be faulted for not raising a claim where he or she has no knowledge of the underlying facts supporting the claim. Rogers did not allege that he told his post-conviction attorney that he did not understand the elements he pleaded guilty to or that his attorney did not question him on the subject. There are no grounds to support a claim of ineffective assistance of counsel and the court of appeals' decision on this issue was not unreasonable.

Rogers maintains that his trial counsel should have moved to suppress his statement on the ground that he was illegally arrested without probable cause. A police show-up report indicated that the arresting officers interviewed Dawan Turner at 12:15 p.m. on September 21, 1993. (Pet. Br. in Supp. Appx., ECF No. 33, at 52-53.) They were told by Turner that he was in the victim's car, that Rogers and Darrell Tyler tied up the victim, and that Rogers shot him in the head. Based on this information, the officers subsequently arrested Rogers along with Tyler an hour later. The arresting officer's interview with Turner established probable cause to arrest Rogers. *See Henry v. United States*, 361 U.S. 98, 102 (1959) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness . . . alone generally is sufficient to establish probable cause to arrest . . . ."). Rogers argues that this report cannot be relied upon to establish probable cause because it was fabricated. Rogers appears

11

to reach his conclusion that this show-up report was fabricated because it was created after his arrest and because it is uncorroborated by another police report. The basis for probable cause was the officer's interview with Turner, not the show-up report itself. That there were no corroborating police reports does not lead to the conclusion that the show-up report was fabricated or that probable cause did not exist for Rogers' arrest. To reach Rogers' conclusion, this would necessarily require a finding that the arresting officer's interview with Turner never occurred. Rogers provides no basis to assume this, much less does he allege that his post-conviction counsel would have had any basis to reach this conclusion. Rogers' post-conviction counsel was not ineffective for ignoring this issue because there existed other, stronger issues on appeal. *See Gray*, 800 F.2d at 646. The court of appeals' decision on this point was not unreasonable.

Rogers also argues that his trial counsel was ineffective for not arguing for suppression on the ground that he did not receive a probable cause hearing within 48 hours of his warrantless arrest as required by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). The court of appeals noted that though the trial court in 1997 had determined a juvenile detention hearing was held within 48 hours of Rogers' arrest, there was no record of the existence of a detention hearing before the court of appeals on review. *Rogers*, 2011 WI App 136, ¶ 11. Nevertheless, the court of appeals reasoned that this was not a basis to conclude that post-conviction counsel was ineffective because Rogers failed to establish that suppression was a proper remedy for a *Riverside* violation. The Supreme Court has declined to determine whether suppression is a proper remedy for a state's failure to hold a detention hearing within 48 hours of arrest. *See Powell v. Nevada*, 511 U.S. 79, 85 n.* (1994); *United States v. Sholola*, 124 F.3d 803, 812 (7th Cir. 1997); *Edmonson v. Harrington*, No. 09-CV-2073, 2013 WL 2178320, *7(N.D. Ill. May 20, 2013) ("[T]he United States Supreme Court has never held that the Fourth Amendment requires the suppression of statements obtained after a

12

*Riverside/Gerstein* violation.). In *State v. Jackson*, the Wisconsin Court of Appeals explained that a *Riverside* violation would entitle a defendant to suppression of any statement made during the unlawful delay only if "the statement was produced as a result of the delay." 229 Wis. 2d 328, 345, 600 N.W.2d 39 (Ct. App. 1999) (citing *State v. Koch*, 175 Wis.2d 684, 699-700, 499 N.W.2d 152, 160 (1993)). That rule does not apply here, however. Rogers was arrested at 1:15 p.m. and was interrogated by the detectives beginning around 5:30 p.m. The interrogation lasted about two and a half hours in which Rogers gave his confession. Even if a *Riverside* violation occurred (i.e., that the probable cause determination occurred 48 hours after his arrest), there is no indication that Rogers' statement was produced as a result of an unlawful delay since his confession was obtained shortly after his arrest. *See State v. Evans*, 187 Wis. 2d 66, 92 n.7, 522 N.W.2d 554 (Ct. App. 1994) ("The appropriate remedy for a *Riverside* violation may be suppression of evidence that is obtained as a result of the violation—i.e., after the point at which the delay became unreasonable."); *see also Koch*, 175 Wis. 2d at 699. There is no reasonable basis to conclude that the police delayed a probable cause hearing for the purpose of gathering additional evidence to justify his arrest. *See Koch*, 175 Wis. 2d at 699 (concluding that suppression of evidence for a *Riverside* violation was not appropriate because the evidence obtained was not a consequence of the violation). Rogers' statement to the detectives was not the product of a *Riverside* violation given that it occurred soon after his arrest. And as noted before, probable cause for Rogers' arrest was based on the arresting officer's prior interview with Turner. Thus, Rogers' statement to the detectives was not necessary to justify his arrest since probable cause was already established. Post-conviction counsel was not ineffective for failing to pursue this issue because there is little probability that the result would have been different even if he raised it.

13

**CONCLUSION**

In sum, the decisions of the court of appeals were not an unreasonable application of federal law. Accordingly, Rogers' petition is denied. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Cases. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). I conclude, for the reasons set forth in this opinion, that Rogers' claims do not warrant a certificate of appealability. Jurists of reason would not find it debatable that Rogers' ineffective assistance of trial and post-conviction counsel claims are without merit. Nor is it debatable that Rogers' claims that his guilty plea was defective, that his confession was involuntary, or that the state failed to establish a waiver of his *Miranda* rights are also without merit.

**THEREFORE, IT IS HEREBY ORDERED** that Rogers' petition for a writ of habeas corpus is **denied** and the petition is **dismissed**. A certificate of appealability shall not issue.

Dated this 14th day of June, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

14

Case 1:11-cv-00137-WCG   Filed 06/14/13   Page 14 of 14   Document 40